STATE EX REL. JACOBS, RELATOR, *v*. DISTRICT COURT ET AL., RESPONDENTS.

(No. 3,421.)

(Submitted January 5, 1914.    Decided January 20, 1914.)

[138 Pac. 1091.]

*District Judges—Disqualification—Affidavit of Imputed Bias—Time of Filing—Waiver—Continuances.*

District Judges—Affidavit of Bias and Prejudice—When Too Late.
1.    At the time set for hearing a matter in probate, it was continued for four days.    On the day before the expiration of the continuance an affidavit was filed by one of the parties imputing bias and prejudice to the presiding judge.    *Held, on mandamus,* that the affidavit was properly stricken, it not having been filed before the day originally fixed for the hearing, as provided by amended section 6315, Revised Codes (Laws 1909, Chapter 114), and the statute not making any provision for filing such affidavits during continuances as such.

[As to disqualification of judge to act in probate matter because of interest in estate, see note in Ann. Cas. 1912C, 1165.]

Same—Waiver.
2.    Like the peremptory challenge of a juror, the disqualification of a district judge for imputed bias under section 6315, Revised Codes, *supra,* is waived if not exercised at the proper time.

[As to waiver of objections to disqualified judge, see note in Ann. Cas. 1912A, 1072.]

Original application for *mandamus* by the state, on the rela-tion of A. R. Jacobs against the district court of the fifth judicial district, for Beaverhead county, and W. A. Clark, a judge thereof.    Dismissed.

*Mr. Richard H. Smith,* and *Mr. Harry H. Parsons,* for Relator, submitted a brief, as well as one in reply to that of respondents; *Mr. Parsons* argued the cause orally.

*Messrs. Norris, Hurd & Smith,* for Respondents, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

On November 15, 1913, the relator herein filed in the district court of Beaverhead county his final report and account as guardian of the estate of Venora E. Metlen, incompetent. To this report and account D. E. Metlen, as the husband of Venora E. Metlen, filed certain objections. By order of court, the respondent, Judge Clark, presiding, the hearing upon the report, account and objections was set for December 9, 1913. On that [1] day the objector and his wife appeared in person and by counsel, and announced their readiness to proceed; the guardian was not present nor represented. Judge Clark then stated that he had received a communication from the relator to the effect that a compromise had been reached in said matter, whereby the relator was to be paid $1,200, in addition to the sums theretofore received by him, as payment for his services rendered therein. To this counsel for Mr. and Mrs. Metlen responded that the agreement was for the payment of a balance of $700 only to the relator. Whereupon the judge, being of the opinion that the relator should be present at the hearing, and that his failure to appear was due to a misunderstanding, ordered "that further proceedings in said matter be continued until Saturday, December 13, 1913, at 10 o'clock A. M." On December 13, 1913, the matter was again called up, counsel for all the parties being present, and the clerk exhibited an affidavit of the relator, filed the preceding day, seeking to disqualify Judge Clark on account of imputed bias and prejudice. This affidavit was ordered stricken from the files because filed after the day fixed for the hearing of the matter, and after the hearing thereof had in fact commenced, and further hearing was again continued "on account of pressure of business of the court" to December 16, 1913, at 4 P. M. The alternative writ of mandate issued out of this court on December 15, 1913, has prevented further action. The respondent is one of the judges of the fifth judicial district, which includes the county of Beaverhead, and the other judge thereof was disqualified by reason of having been an at-

torney in said matter. The question presented is whether, upon the facts stated—we do not deem the other facts of record as important—a peremptory writ of mandate should issue to Judge Clark, directing that he revoke the order striking the affidavit of the relator from the files, that he restore the same, and that he make an order calling in another district judge to hear and determine the controversy or transfer it to some other district in this state.

In our view of this proceeding it is not necessary to decide whether *mandamus* may be properly invoked to compel a district judge to give effect to an affidavit of disqualification duly filed under the statute. Assuming *mandamus* to be a proper remedy, we nevertheless think that it is not available to the relator, for the following reasons: The statute involved (Rev. Codes, sec. 6315, as amended, Laws 1909, p. 161) provides: "Any * * * judge * * * must not sit or act as such in any action or proceeding: * * * 4. When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge. Such affidavit * * * shall be filed * * * at any time before the day appointed or fixed for the hearing or trial of any such action, motion or proceeding." This provision has been before this court for construction on several occasions, once under such circumstances as to render the views then expressed practically decisive of the instant case. The decision referred to is *State ex rel. Nissler* v. *Donlan*, 32 Mont. 256, 80 Pac. 244, and from the statement of facts it appears to have been a hearing upon motions to adopt and to reject the findings of a referee upon an executor's account to which objections had been filed. The hearing was originally set for February 18th, at which time a motion was made to vacate the setting on the ground that Judge Donlan had not jurisdiction to proceed. This motion was based upon the theory that Judge McClernan, of the same court, who had previously taken cognizance of the proceedings, had upon the redistribution of

the work of that court among the three judges thereof, reserved to himself for hearing and determination all matters connected with the settlement of the executor's account, notwithstanding that proceedings in probate had in general been assigned to the department presided over by Judge Donlan. The motion was overruled by Judge Donlan. During the noon recess Judge Mc-Clernan, without consulting with either of the other judges, made a formal order reserving the hearing to his department. When the court reconvened, Judge Donlan declined to regard this order as binding, but postponed further hearing of the motions until February 25th, and on that day a further postponement was had to March 4th. In the meantime an affidavit was filed, seeking to disqualify Judge Donlan under the provision above quoted, but Judge Donlan declined to relinquish jurisdiction, and refused to make an order transferring the matter. It will be observed that the difference between the facts in the *Nissler Case* and those at bar is not material. It does not appear that anything occurred in that case before the postponement, except an assertion by Judge Donlan of his own authority, which did not in any sense touch the merits of the matter before the court. Counsel for the relator at bar suggest that a hearing has begun only when it may be said that a new judge "could not step in and at that very moment proceed with the hearing with a full and complete knowledge of the proceedings." Without either accepting or rejecting this test, we may say that nothing is disclosed in the *Nissler Case* that would have prevented a new judge from proceeding with the hearing after the affidavit was filed, with full and complete knowledge, yet upon the circumstances of the *Nissler Case* this court, speaking through the chief justice, said: "Was the affidavit filed in time to disqualify Judge Donlan from hearing the motion upon settling the account? * * * Section 180 * * * declares that the particular disqualification of imputed bias and prejudice shall be made to appear by affidavit filed at any time before the day fixed for the trial or hearing. * * * The intention is clearly manifested that the affidavit is not to be regarded as effective

to interrupt a hearing after the arrival of the day fixed for that purpose.  *  *  *  The disqualification of imputed bias and prejudice provided for in subdivision 4 of the Act is purely statutory.  It does not rest upon the ascertainment of any fact, but only upon an imputation.  Such being the case, and the statute being open to so much abuse, we are inclined to construe it strictly according to its express terms, and not broaden it by implication to include conditions not clearly within them. *  *  *  The statute does not admit of a construction that would permit a litigant to file an affidavit of disqualification after the day for hearing has arrived, and thus rob the court or judge of the power to proceed.''  These views and the application of them to the present case are supported, to a greater or less degree, by the following authorities: *Redman* v. *State,* 28 Ind. 205; *Allen* v. *Coates,* 29 Minn. 46, 11 N. W. 132; *State ex rel. Dearborn* v. *Merrick,* 101 Wis. 162, 77 N. W. 719.

It is suggested that, as the statute does not make any express allowance for continuances of any kind, and as a continuance over the term must certainly restore the situation prior to the setting, the right to disqualify cannot expire on the day before the first setting, but must be carried forward with each continuance for whatever period.  The answer is twofold: The failure of the statute to make allowance for continuances as such is persuasive, at least, that no such allowance was intended; and this belief is strengthened when we consider the ease with which such an intention, if entertained, could have been expressed. That the legislature knew how to say what it wanted to say with reference to such matters may be gathered from the other provisions of the Code designed to secure fair trials in the case of actual bias.  (Rev. Codes, secs. 7484, 6505, 6987.)  Moreover, the passing of a cause over the term necessarily operates as a vacation of the setting, and a very real distinction exists between that situation and a mere continuance, properly so called, however difficult, it may be to put the distinction into words. Where the effect of an order is to vacate the setting, the case stands for all purposes of the statute under review as though

no setting had been made; but where the effect of an order is to stand upon the setting and, reckoning from that, to defer the trial to a day certain, we can see no reason why the day originally fixed for the hearing should not measure the time limit of disqualification for imputed bias.   Actual disqualification on the part of a judge may be manifested at any time after as well as before the date fixed for a hearing, and it is therefore available in probate proceedings whenever it is made to appear; but the privilege to impute bias to a judge where none may exist belongs to a different order of things and its existence may fairly be limited to a given time.   The disqualification of a judge for [2] imputed bias is like the peremptory challenge of a juror, which may not be exercised after he has once been passed. (*Washoe Copper Co.* v. *Hickey,* 46 Mont. 363, 128 Pac. 584; *State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169.)

The relator suggests that under the above construction it is possible to restrict the disqualifications for imputed bias to a single judge, contrary to the express provision of the statute. We think the danger is more imaginary than real.   Expressly acquitting the relator and his counsel of any impropriety, we say that the statute was not intended to encourage perjury, nor to aid delays, nor to secure postponements which are not deserved.   If a litigant really feels that he cannot secure a fair and impartial trial before a certain judge, he is generally conscious of that feeling before the day fixed for the hearing, and long enough to enable him, by a prompt and proper disclosure of it, to secure to himself every substantial right.

Conceiving, as we do, that the action of the respondent, Judge Clark, was within the letter of the statute in question and within any wise purpose to be served by it, the proceedings herein should be dismissed; and it is so ordered.

*Dismissed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

Rehearing denied February 6, 1914.